# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No. 3:22-cr-00163 |
| ) | Judge Aleta A. Trauger |
| HAU T. LA ) | |

## MEMORANDUM & ORDER

The United States has filed a Motion to Exclude or, In the Alternative, Limit Testimony of Proposed Defense Expert James Patrick Murphy (Doc. No. 46), and Hau T. La has filed a Response (Doc. No. 56). For the reasons set out herein, the motion will be granted in part and denied in part.

Dr. Murphy is a physician hired by La "to write a report regarding [La's] prescribing and treatment practices" at issue in this case. (Doc. No. 46-1 at 1.) The United States does not take issue with Dr. Murphy's qualifications or his ability to testify on general matters relevant to this case, such as the legitimate medical uses of the pain medications at issue. The United States argues, however, that Dr. Murphy's report (1) includes a number of discussions of topics on which he is not qualified to opine or are irrelevant and (2) does not provide any detailed methodology or analysis in support of his conclusions regarding the individual patients and prescriptions at issue.

The United States is correct that a number of sections in Dr. Murphy's report discuss legal matters that are both beyond his own expertise and outside the boundaries of what any expert witness would be permitted to address. "[O]nly the [c]ourt may determine the applicable law in [a] case," and "the [c]ourt alone instructs the jury as to that law." *Heil Co. v. Evanston Ins. Co.*, No. 1:08-CV-244, 2013 WL 11322818, at *1 (E.D. Tenn. Feb. 15, 2013). By extension, "a witness may not testify to a legal conclusion." *Hyland v. HomeServices of Am., Inc.*, 771 F.3d 310, 322 (6th Cir. 2014) (citing *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994)). The court

accordingly will bar Dr. Murphy from testifying on any matter of law. That prohibition includes any attempts by Dr. Murphy to provide a legal definition of the "usual course of practice."

Dr. Murphy also cannot testify regarding La's mental state. Nothing about Dr. Murphy's medical expertise qualifies him to reach conclusions about La's subjective interior state of mind at any point. Similarly inappropriate are Dr. Murphy's speculations about the motivations of courts, the Tennessee Board of Medical Examiners, and the FDA.

The same is true regarding Dr. Murphy's speculation as to the hypothetical motivations that would support alternative methods of treatment. For example, while it is within the scope of Dr. Murphy's expertise to provide opinions regarding the tapering of "legacy" patients, he cannot testify that doing so would reflect a "misdirected attempt to right a systemic wrong as opposed to doing what physicians are supposed to do." (Doc. No. 46-1 at 33.) The conclusion that every physician who would advocate such an approach would have improper motivations is beyond Dr. Murphy's expertise and unsupported by any expert analysis.

The United States also objects to the fact that Dr. Murphy's report refers to changes in medical standards that were made to reflect emergency conditions during the coronavirus pandemic. The court agrees that any such discussion is likely to confuse the jury more than it assists them, given that those changes in care were not in place at the time the relevant prescriptions were written. Finally, the government objects to Dr. Murphy's complaints about the severity of the punishments that pain medication prescribers potentially face, which the court finds to be similarly irrelevant and prejudicial.

Other aspects of Dr. Murphy's report, however—including some to which the United States does not specifically object—are both within his expertise and relevant to disputed issues in this case. For example, the United States "does not oppose general testimony that opioids are

2

effective pain relievers" and "does not take issue" with Dr. Murphy's anticipated "general testimony" regarding "the characteristics and basic structure of the practice of medicine." (Doc. No. 46 at 6, 9.) That testimony, even if general in nature, could be of significant importance to the jury, particularly regarding the practice of relying on patient reports of their own symptoms and needs. The court accordingly will not bar Dr. Murphy from testifying altogether and will instead merely limit the scope of that testimony.

The closest question posed by the government's motion is whether Dr. Murphy will be permitted to testify regarding his conclusions that the individual prescriptions at issue in the indictment were made in the usual course of professional practice in an authorized manner. Dr. Murphy's report falls significantly short of the level of patient-specific detail and analysis that the court would typically expect to find in a physician's chart review. Indeed, there is no meaningful patient-by-patient analysis in the report at all. Rather, Dr. Murphy primarily discusses the patients and prescriptions collectively:

> The evidence I reviewed allows me to conclude that Dr. La treated each of his patients for a right and "legitimate" purpose and in the manner expected of a physician and in the context of a patient-physician relationship. Each patient reported pain. Dr. La respected each patient's report of pain, which, in each case, was a legitimate medical need. Therefore, since each of Dr. La's patients had a legitimate medical need, the intent to relieve pain constituted a legitimate medical purpose for the prescription of pain medications in each and every case. After considering the information available to him and after weighing the benefits against the potential risks, Dr. La . . . prescribed each patient a reasonable dose of medication that is FDA-approved for treating pain.

(Doc. No. 46-1 at 28–29.) The lack of individualized analysis in that passage is striking. It does not, however, persuade the court to exclude the testimony. The United States has not identified any caselaw requiring an itemized, patient-by-patient breakdown in cases where a witness's analysis does not require it. As the court reads Dr. Murphy's report, he has omitted greater detail because he would view it as beside the point in light of the relatively credulous and undemanding

standards he believes apply to the dispensing of pain medication in the usual course of authorized medicine.

The threshold for whether Dr. Murphy's proposed testimony is admissible is whether it "will help the trier of fact to understand the evidence or to determine a fact in issue," is "based on sufficient facts or data," is "the product of reliable principles and methods," and reflects Dr. Murphy's having "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The United States characterizes the report as falling short of that standard by failing to reveal Dr. Murphy's methodology, but that is not the court's reading. Rather, Dr. Murphy does seem to have described a methodology—just a very simple, very forgiving one. He reviewed the patient files and found reports of pain that the prescribed medication was ostensibly intended to treat, which he found was sufficient. Whether one finds that line of thinking persuasive or not, it reflects an application of his methodology to sufficient data and therefore falls within the ordinary contours of expert opinion—or at least *will* fall within those contours once the aforementioned inappropriate digressions, such as those involving La's state of mind, are excised. The government will have ample opportunity to highlight any flaws in Dr. Murphy's analysis on cross examination. The court, however, will not bar him from giving his opinions altogether.

For the foregoing reasons, the government's Motion to Exclude or, In the Alternative, Limit Testimony of Proposed Defense Expert James Patrick Murphy (Doc. No. 46) is hereby **GRANTED** in part and **DENIED** in part. Dr. Murphy is barred from testifying on the following topics: (1) any issue of law, including the legal definition of "usual course of practice"; (2) La's mental state; (3) the hypothetical mental state of any physician or caregiver who would have acted differently than La; (4) the motivations of any court or regulatory body; (5) his own opinions on

4

whether punishments for prescribers are too harsh or any other policy issue; and (6) any changes in medical practices that post-dated the prescriptions at issue in the Indictment.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge