# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:22-cr-00163** |
| | ) | |
| **HAU T. LA** | ) | **Judge Aleta A. Trauger** |

### MEMORANDUM

Before the court are defendant Hau T. La's Amended Motion for Judgment of Acquittal (Rule 29) and Motion for a New Trial (Rule 33). (Doc. No. 117.) The court finds that an evidentiary hearing is not required. For the reasons set forth herein, the motions (filed in a single document) will be denied.

## I.    PROCEDURAL BACKGROUND

Defendant La was indicted on April 25, 2022 on sixteen counts of knowingly distributing controlled substances outside the usual course of professional practice and without a legitimate medical purpose. (Doc. No. 3.) The Indictment was unsealed and the defendant was arrested on May 2, 2022. One of his two retained trial attorneys, Lynne Ingram, represented him at his initial appearance on that date and at the arraignment on May 13, 2022. On May 16, 2022, the court scheduled trial to begin July 12, 2022. (Doc. No. 19.) Ingram successfully pursued a Motion to Modify Conditions of Release for her client. (Doc. Nos. 20, 21.)

On June 24, 2022, the parties filed a Joint Motion for Status Conference, in which they communicated to the court their expectation that the case would proceed to trial as scheduled on July 12, 2022. (Doc. No. 23.) Prior to trial, the government filed two Motions in Limine, to which the defendant responded (Doc. Nos. 25, 27, 32, 33), and the defendant filed his own Motion in Limine (to exclude the testimony of Dr. Elizabeth Null) (Doc. No. 35), which the court denied

(Doc. No. 42). The defendant also filed several proposed jury instructions, aside from the parties' agreed instructions. (Doc. Nos. 43, 47, 51.) He responded to the government's motion to exclude his proposed expert, which the court nonetheless granted in part. (Doc. Nos. 46, 56, 57.)

The five-day trial indeed began on July 12, just two months after arraignment. (Doc. Nos. 59–62, 65.) The defendant was represented at trial by two retained attorneys: Ingram and Bryna Grant. The government presented seven witnesses, including three former employees of the defendant's clinic, a TBI agent, a medical expert, and three former patients of Dr. La's. The defendant's attorneys vigorously and effectively cross-examined each witness.

At the close of the government's proof, the defendant moved for a judgment of acquittal under Rule 29(a) of the Federal Rules of Criminal Procedure, arguing generally that the evidence was insufficient to prove that Dr. La "inten[tionally] or knowingly distributed [controlled substances] outside of the usual course of professional practice and without a legitimate medical purpose." (Doc. No. 90, at 189.) The court denied the motion. (*Id* at 192.)

The defense presented three witnesses, including the defendant himself, his former office manager, and a medical expert, Dr. James Patrick Murphy. The defendant's evidence was generally directed toward establishing that his prescribing of controlled medication in each of the instances on which the charges against him were based was for legitimate medical purposes and within the usual course of the practice of medicine.

Both parties presented closing arguments. The court instructed the jury, after having denied the defendant's request for a "good faith" instruction and granted the government's request for a "deliberate ignorance" instruction. On the sixth day of trial, July 19, 2022, the jury returned a verdict of guilty on twelve, and not guilty on four, of the sixteen counts in the Indictment. (Doc. No. 67, 69.) Following the verdict, the defendant renewed his Rule 29 motion, which the court

denied, stating: "This jury obviously worked very hard, they obviously went over each count individually and made their decision based on the evidence." (Doc. No. 93, at 34.) Indeed, the jury had deliberated from about 10:20 a.m. until about 5:55 p.m. The court set sentencing for January 5, 2023. (Doc. No. 72.)

Lead trial counsel for Dr. La filed a Motion to Withdraw on July 26, 2022. (Doc. No. 74.)[1] On July 29, 2022, his remaining attorney filed her own Motion to Withdraw (Doc. No. 80), as well as a Motion to Appoint Counsel, requesting specifically the appointment of Meggan Sullivan, "as she was present for many days of the trial and is already familiar with the Defendant and has experience with cases like his" (Doc. No. 76, at 1). The court granted these motions (Doc. Nos. 75, 83, 81) and, on August 1, 2022, appointed Meggan Sullivan to represent the defendant (Doc. No. 84).

On August 2, 2022, promptly after her appointment, Sullivan ("current counsel") filed a Motion for Extension of Time to File Motion for Judgment of Acquittal or Motion for New Trial, explaining that she "need[ed] to order the trial transcripts and review the case to determine what issues form the basis to file those motions in this case." (Doc. No. 85.) The court granted the motion, extending the deadline to September 19, 2022. (Doc. No. 86.) Before that deadline expired, current counsel filed a second Motion to Extend Deadline to File Motion for Judgment of Acquittal. (Doc. No. 94.) The court granted this motion as well, extending the deadline to October 3, 2022. (Doc. No. 95.) Current counsel filed a Third Motion to Extend Deadline to File Motion for Judgment of Acquittal on October 3, 2022 (Doc. No. 96), and the court granted another fourteen-day extension of the deadline, or until October 18, 2022. (Doc. No. 97.)

---

[1] When the court scheduled the sentencing, just after excusing the jury, attorney Ingram noted that she would no longer be representing the defendant, and the court noted that she would "be on the bench" by then. (Doc. No. 93, at 35.)

On October 11, 2022, prior to the expiration of that deadline, the defendant, through current counsel, filed a Motion to Extend Deadline to File Motion for a Rule 33 New Trial. (Doc. No. 93.) He filed his Amended Motion and supporting Memorandum on October 17 and 19 (Doc. Nos. 104, 108), indicating that the anticipated motion for a new trial would be premised upon evidence of ineffective assistance of counsel. On October 25, 2022, the court granted the defendant an extension of the deadline to file a motion for a new trial, finding in part that the "serious allegations of ineffective assistance of trial counsel, coupled with newly appointed counsel's repeated and consistent messaging to the court that she intended to file post-trial motions, provide a reasonable basis for the delay" in filing the anticipated motion for a new trial and for extending the deadline to do so. (*See* Doc. No. 110, at 7.) The court extended the deadline for filing a Rule 33 motion to November 15, 2022 and noted that "[f]urther extensions" of the deadline would "not be lightly granted." (*Id.* at 10.)

Current counsel filed a Motion for Judgment of Acquittal (Rule 29) and Motion for New Trial (Rule 33), a supporting Memorandum, and three of four Declarations cited in the Memorandum (those of the defendant, Mike Staples, and Ronald Chapman II) on November 15, 2022. (Doc. Nos. 111, 112, 113.) After the government obtained an extension of the response deadline, current counsel for the defendant, without seeking leave of court, filed an Amended Motion and Amended Memorandum on December 2, 2022.[2][3] (Doc. Nos. 117, 118.) As explained

---

[2] The Amended Motion is denominated on the docket as a Motion to Amend, but nothing in the document itself requests leave to amend.

[3] The government's Motion for Extension of Time requested that its response time be extended to four weeks after the defendant "complete[d] the filing of his Motion" by filing the fourth declaration cited in his Memorandum, that of Dr. Patrick Murphy, the defense expert. After the defendant filed his Amended Motion and Amended Memorandum, which still claims that Dr. Murphy "warned defense counsel that they needed more time to prepare for trial" (Doc. No. 118 at 33) but no longer actually cites a declaration by Dr. Murphy, the court entered a new Order setting the government's response deadline, noting that the amended filings no longer relied on

in greater detail below, the defendant presents a number of issues in the Amended Memorandum, but they fall into three general categories: (1) that the court provided erroneous jury instructions and erred in failing to exclude the government's expert; (2) that the evidence is insufficient to support the verdict, in light of the court's errors; and (3) that trial counsel was so grossly ineffective and "so prejudiced by conflict of interest," that Dr. La's Sixth Amendment right to the effective assistance of counsel was violated. The defendant contends that acquittal is the appropriate remedy for these purported errors or, alternatively, a new trial with a properly instructed jury and adequate representation. The government filed a Response in Opposition to the Amended Motion (Doc. No. 120), and the defendant filed a Reply (Doc. No. 121).

Counsel for the government thereafter filed a Notice Correcting the Record, giving notice that she had mistakenly provided to the defendant's previous counsel only one of the two investigative files relating to pending complaints made against a witness for the prosecution, Dr. Elizabeth Null, before the Tennessee Department of Health ("TDOH"), although counsel for the government had provided defense counsel notice of both pending complaints and copies of all statements made by Dr. Null in the course of both investigations, as provided to the government by TDOH. (Doc. No. 122.) Counsel for the government seeks to correct her previous "honest[] but mistaken[]" statement made on the record during the trial that the government had provided the defendant the "full contents of both files." (*Id.* at 1.) The defendant responded to the Notice by supplementing his Amended Memorandum in Support of his Motion for Judgment of Acquittal (Rule 29) and Motion for New Trial (Rule 33). (Doc. No. 123.) He argues here that the government's failure to provide both complete files on the complaints against Dr. Null constitutes

---

"the filing of a declaration by Dr. Murphy." (Doc. No. 119.) It is unclear what other changes were made between the original and amended filings. It is nonetheless clear that the amended motion entirely supersedes the first.

a *Brady* violation (referencing *Brady v. Maryland*, 373 U.S. 93 (1963)), and provides another example of previous counsel's ineffectiveness—since presumably previous counsel would have noticed that they received only one file rather than two if they had actually looked at what the government had provided. The government's Reply asserts that there is no *Brady* violation or prejudice resulting from the omission. (Doc. No. 124.) The government also filed, under seal, a complete copy of the subject investigative file. (Doc. No. 126-1.)

## II. RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL

A district court considering a timely motion for judgment of acquittal under Rule 29 must determine "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Washington*, 715 F.3d 975, 979 (6th Cir. 2013) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original)). In making this assessment, the court does not make findings of fact, weigh the evidence, consider the credibility of witnesses, or otherwise substitute its judgment for that of the jury. *See id.* The Sixth Circuit has explained that a defendant claiming insufficiency of the evidence "bears a very heavy burden." *United States v. Abner*, 35 F.3d 251, 253 (6th Cir. 1994) (quoting *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986)).

The defendant's argument is premised upon his assertion that the government's evidence, while sufficient to establish that he knowingly and intentionally issued prescriptions for controlled substances, was not sufficient to establish beyond a reasonable doubt that he knowingly and intentionally did so "outside the usual course of professional practice and without a legitimate medical purpose." (Doc. No. 118, at 3.) He asserts that he was instead convicted of "garden variety malpractice." (*Id.* at 11.)

This argument largely reiterates those made during trial at the close of the government's proof. Having again considered Dr. La's motion and all of the evidence presented at trial in the light most favorable to the prosecution, the court concludes that a rational trier of fact could find, beyond a reasonable doubt, the essential elements of each charged violation of 21 U.S.C. § 841(a)(1). Moreover, even if the defendant were correct (as discussed below) that his Sixth Amendment right to the effective assistance of counsel was violated or that the trial was infected by substantial legal error, the appropriate remedy would be a new trial, not a judgment of acquittal. Accordingly, the motion for judgment of acquittal will be denied.

## III.  RULE 33 MOTION FOR NEW TRIAL

### A.  Legal Standard

Rule 33 provides that the court, upon a timely motion by the defendant, "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).[4] The standards governing a Rule 33 motion are "far different" from those governing a Rule 29 motion. *United States v. Hansberry*, No. 2:15-CR-20217, 2017 WL 1100947, at *2 (E.D. Mich. Mar. 24, 2017). "A verdict may well be against the great weight of the evidence, but, nevertheless, be substantial enough to permit reasonable jurors to draw an inference of guilt." *United States v. Turner*, 490 F. Supp. 583, 593 (E.D. Mich. 1979), *aff'd*, 633 F.2d 219 (6th Cir. 1980). And, on a Rule 33 motion for a new trial, the court can "consider the credibility of the witnesses and the weight of the evidence to insure that there is not a miscarriage of justice." *Id.* In other words, "[i]n contrast to Rule 29—under which a trial court must view the evidence in a fashion most favorable to the Government—Rule 33 places no such restriction." *Hansberry*, 2017 WL 1100947, at *2

---

[4] The defendant's motion for a new trial was not timely, but, as previously noted, the court granted leave to extend the deadline.

(quoting *United States v. Haywood*, No. 3:98CR789, 1999 WL 1489895, at \*6 (N.D. Ohio Oct. 1, 1999)).

While Rule 33 does not define the term "interest of justice," "several recurring themes [have] emerge[d]" in the caselaw. *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010). "The paradigmatic use of a Rule 33 motion is to seek a new trial on the ground that the jury's verdict was against the manifest weight of the evidence." *Id.* If the court determines that the verdict is against the "manifest weight of the evidence," then it must grant a new trial. *United States v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007). "Generally, such motions are granted only 'in the extraordinary circumstance where the evidence preponderates heavily against the verdict.'" *Id.* at 592–93 (quoting *Turner*, 490 F. Supp. at 593)).

In addition, it is "widely agreed that Rule 33's 'interest of justice' standard allows the grant of a new trial where substantial legal error has occurred." *Munoz*, 605 F.3d at 373 (internal quotation marks and citation omitted). A violation of a defendant's Sixth Amendment right to the effective assistance of trial counsel constitutes one such "substantial legal error" that will warrant a new trial. *United States v. Arny*, 831 F.3d 725, 730–31 (6th Cir. 2016) (quoting *Munoz*, 605 F.3d at 373). In addition, erroneous or insufficient jury instructions might warrant a new trial, but only if the instructions, "taken as a whole, are misleading or give an inadequate understanding of the law." *Miami Valley Fair Hous. Ctr., Inc. v. Connor Grp.*, 725 F.3d 571, 579 (6th Cir. 2013) (quoting *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 966 (6th Cir. 1998)). The court cannot consider allegedly insufficient instructions "in isolation" but must instead "consider the charge as a whole." *Id.* (quoting *United States v. Prince*, 214 F.3d 740, 760–61 (6th Cir. 2000)).

"The defendant bears the burden of proving the need for a new trial and such motions should be granted sparingly and with caution." *United States v. Turner*, 995 F.2d 1357, 1364 (6th Cir. 1993).

### B.      The Manifest Weight of the Evidence

The court notes as an initial matter that, insofar as the defendant's motion may be construed as arguing that he is entitled to a new trial because "the jury's verdict was against the manifest weight of the evidence," *Munoz*, 605 F.3d at 373, even if the evidence is not so strong as to warrant a judgment of acquittal, the court is not persuaded. Considered in its totality, the evidence presented at trial did not preponderate against the guilty verdicts. The court also observes that the defendant does not attempt to differentiate between the different charges on which he was found guilty or point to any particular charge with respect to which the verdict was not adequately supported.

### C.      Ineffective Assistance of Counsel

The defendant argues that his lead trial attorney, Lynne Ingram, was operating under an actual conflict of interest that adversely affected her client's interests, warranting a conclusion that Dr. La had been deprived of the effective assistance of counsel without need of any proof that counsel's deficiencies prejudiced him. More specifically, he argues that, although the defendant signed a retainer agreement with attorney Grant in February 2022, no meaningful work was done prior to his indictment on April 25, 2022. On May 3, 2022, attorney Ingram won the Democratic primary in her race for election as a judge of the Eighth Circuit Court for Tennessee's Twentieth Judicial District. Because she was running unopposed in the general election, her winning the primary effectively meant that she would be elected judge on August 4, 2022. Ingram first appeared with Dr. La at his initial appearance on May 2, 2022 (*see* Doc. No. 10), before she won the primary, and again at his arraignment on May 13, 2022 (Doc. No. 16), following which the

court set trial for July 12, 2022 (Doc. No. 19). On June 27, 2022, the defendant signed an agreement formally retaining Ingram and Grant as his trial counsel, subject to payment of a nonrefundable retainer fee of $80,000. (Doc. No. 118-1, at 7.) At a Joint Motion for Status Conference filed on June 24, 2022, counsel for both parties represented to the court that the case was expected to proceed to trial as scheduled on July 12, 2022. (Doc. No. 23.)

According to Dr. La, Ingram did not tell him that she had been elected judge until approximately one week before trial, and she never explained to him how this might affect his trial. (Doc. No. 113, La Decl. ¶ 3.) The defendant argues that his case was not ready to go to trial just two months after his arraignment, that his attorneys knew his case was not ready to go to trial, and that they nonetheless went ahead with trial on July 12, 2022, because a continuance would have meant that Ingram would not have been able to represent him at trial and would have had to forfeit her interest in the retainer fee. The defendant insists that Ingram's election to the bench, coupled with the $80,000 retainer, gave rise to an actual conflict between Ingram's pecuniary interests and the defendant's welfare and that this conflict adversely affected her representation of him, because it directly prevented her from seeking a continuance. He argues that, as a result, prejudice arising from this conflict must be presumed.

Dr. La also argues that his attorneys' performance was grossly ineffective and that the cumulative effect of their errors prejudiced his defense and deprived him of his Sixth Amendment right to counsel. He asserts that, among other possible errors, his attorneys failed to:

(1) promote their client's best interests and adhere to the Local Rules and ethics rules when attorney Grant made extrajudicial statements that she knew or should have known would be disseminated publicly and had a substantial likelihood of prejudicing the defense;

(2) adhere to appropriate standards in cross-examining government witnesses, as evidenced by Grant's telling a government witness that she was "proud" of him for overcoming addiction (*see* Doc. No. 88, at 171);

(3) investigate exculpatory evidence, including prior investigations by the FBI finding no evidence of wrongdoing at Dr. La's clinic;

(4) provide the defendant's retained consultant's investigator, Mike Staples, reasonable time to investigate the criminal history and prescribing history of the patients whose prescriptions gave rise to the charges in the Indictment (the "Indictment patients"), to interview or investigate former patients of Dr. La's who were not called or subpoenaed by the government, or to investigate the totality of Dr. La's prescriber data available on the Controlled Substance Monitoring Database;

(5) investigate or research the accuracy of the "point of care cup" urine drug tests administered at Dr. La's clinic;

(6) investigate the number of clinics shut down by the government and the effect such closures had on the pain patient population and, particularly, on the Indictment patients;

(7) interview or call as witnesses any of the ten individuals identified by Dr. La as potential witnesses approximately two weeks before trial;

(8) properly prepare Dr. La to testify at trial;

(9) inform Dr. La of the government's plea offer;[5]

(10) meaningfully review discovery with Dr. La and inform him of all the evidence against him prior to trial;

(11) seek to continue trial despite actual knowledge that the defense expert, the consultant's investigator, and counsel themselves needed more time to prepare and investigate

(12) file any "meaningful" motions *in limine* to exclude the government's evidence or experts or challenge the search warrant for Dr. La's clinic, even though the warrant does not appear to be justified by probable cause;

(13) call investigator Mike Staples as a witness, when he could have testified about his audit of Dr. La's patient files and could have impeached the government's expert's testimony;

(14) disclose attorney Lynne Ingram's actual conflict of interest prior to trial or inform the defendant that her election as judge "prevented her from continuing the trial to ensure her adequate preparation for trial" (Doc. No. 118, at 34);

---

[5] The defendant has not presented evidence that the government presented a plea offer that previous counsel failed to relay to him. The court, therefore, disregards this allegation entirely.

(15) disclose to the defendant that attorney Grant had not tried a case in three years due to her alcoholism and had never before been admitted to practice in federal court or tried a case in federal court;

(16) investigate or interview witnesses identified in *Jencks* and *Brady* material who might have assisted in Dr. La's defense; and

(17) consult with a toxicology expert to provide meaningful cross examination of the government's expert.

(*See* Doc. No. 118, at 29–36.) The defendant argues that his attorneys generally failed to adequately prepare for a trial of this nature. (*Id.* at 35.)

### 1. Standard of Review

Generally, whether in the context of collateral proceedings, a direct appeal, or a motion for a new trial, to prevail on a claim of ineffective assistance of counsel, the defendant must first "show that counsel's performance was deficient" by "an objective standard of reasonableness," meaning that trial counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed [him] by the Sixth Amendment." *Arny*, 831 F.3d at 731 (quoting *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). A court's "scrutiny of counsel's performance must be highly deferential," in light of the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* (quoting *Strickland*, 466 U.S. at 689). In addition to showing deficient performance, the defendant must establish that "the deficient performance prejudiced the defense," meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Strickland*, 466 U.S. at 687). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694).

In *United States v. Cronic*, 466 U.S. 648 (1984), decided the same day as *Strickland*, the Court identified several narrow and rare circumstances involving Sixth Amendment violations in which prejudice will be presumed, that is, circumstances "so likely to prejudice the accused that

the cost of litigating their effect in a particular case is unjustified." *Id.* at 658. The three such situations are: (1) the "complete denial of counsel" at a "critical stage" of the litigation; (2) "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing"; and (3) "although counsel is available to assist the accused during trial," it was highly unlikely that even a "fully competent" lawyer could provide effective assistance—for example, as in *Powell v. Alabama*, 287 U.S. 45 (1932), where counsel is appointed the day of trial. *Cronic*, 466 U.S. at 659–62.

In addition, the *Strickland* Court recognized that a "similar, though more limited" presumption of prejudice may apply when "counsel is burdened by an actual conflict of interest." *Strickland*, 466 U.S. at 692 (citing *Cuyler v. Sullivan*, 446 U.S. 335, 345–50 (1932)). In such a case, where counsel breaches a duty of loyalty, it is often "difficult to measure the precise effect on the defense of representation corrupted by conflicting interests." *Id.* In such a case, prejudice will be presumed "if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Id.* (quoting *Sullivan*, 446 U.S. at 350, 348).

The Supreme Court subsequently clarified the conditions under which a court should presume prejudice upon a showing of an actual conflict under *Sullivan*. In *Mickens v. Taylor*, 535 U.S. 162 (2002), the Court observed disapprovingly that lower courts had applied *Sullivan*'s presumed prejudice rule "unblinkingly to all kinds of alleged attorney ethical conflicts," "even" alleged conflicts involving counsel's "personal or financial interests." *Id.* at 174 (internal quotation marks and citations omitted). In *Mickens*, the Court emphasized that *Sullivan* required showing that "counsel actively represented conflicting interests," rather than simply showing the existence of conflicts between a client's welfare and counsel's financial interests. *Id.* at 175–76. Following

*Mickens*, the Sixth Circuit has repeatedly held that ineffective assistance claims premised upon attorneys' financial conflicts of interest are analyzed under *Strickland*, requiring a showing both that counsel's conduct was deficient *and* that the defense was prejudiced thereby. *See, e.g.*, *Leonard v. Warden*, 846 F.3d 832, 844 (6th Cir. 2017) ("This Court has consistently held [in light of *Mickens*] that . . . the *Sullivan* standard does not apply to claims of conflict of interest other than multiple concurrent representation; in such cases . . . , the *Strickland* standard applies." (internal quotation marks and citation omitted)); *McRae v. United States*, 734 F. App'x 978, 982–83 (6th Cir. 2018) (applying the *Strickland* standard in the context of a "conflict of interest between [the attorney's own pecuniary interest and the duty of loyalty he owed to [the defendant]" arising from the attempted extortion of the defendant by his attorney). *Accord United States v. Walter-Eze*, 869 F.3d 891, 905–06 (9th Cir. 2017) (applying the *Strickland* prejudice standard to a situation in which threatened financial sanctions against an attorney gave rise to an actual conflict of interest, relying on *Mickens*).

> 2.     *The* Strickland *Standard Applies, and the Defendant Is Required to Establish Prejudice*

Although the defendant appears to argue to the contrary, it is overwhelmingly clear that none of the situations envisioned by *Cronic* is presented here. The defendant had counsel at every critical stage of the litigation. His attorneys also did not "entirely fail[] to subject the prosecution's case to meaningful adversarial testing." *Cronic*, 466 U.S. at 659. For prejudice to be presumed based on such a failure, it "must be complete," and a mere failure to contest the government's case at specific points during a particular proceeding will not suffice. *Bell v. Cone*, 535 U.S. 685, 697 (2002). Here, counsel showed up at all critical steps of the proceedings, retained an expert, filed a pretrial motion *in limine* to exclude the testimony of Dr. Null, a consulting physician employed by Dr. La's clinic who testified on behalf of the government, presented proposed jury instructions and

opposed some of the government's proposed instructions, deftly cross-examined all of the government's witnesses, presented witnesses on behalf of the defendant, made opening statements and closing arguments, and preserved the defendant's ability to bring a post-verdict Rule 29 motion by bringing a Rule 29(a) motion upon the close of the government's proof. This is indisputably *not* a situation in which defense counsel failed to subject the government's case to meaningful adversarial testing.

Likewise, this case is not remotely comparable to *Powell v. Alabama*, in which counsel was appointed on the day of trial. Notably, the Supreme Court expressly recognized in *Cronic* that not every "refusal to postpone a criminal trial" will give rise to the presumption of ineffective assistance that arose in *Powell*. *Cronic*, 466 U.S. at 661 (citing *Avery v. Alabama*, 308 U.S. 444 (1940), as finding no presumption of prejudice, even though counsel was appointed in a capital case three days before trial, because "evidence and witnesses were easily accessible to trial counsel," and "the circumstances did not make it unreasonable to expect that counsel could adequately prepare for trial during that period of time"). Rather than a *per se* rule, the Court held that it is "only when surrounding circumstances justify a presumption of ineffectiveness can a Sixth Amendment claim be sufficient without inquiry into counsel's actual performance at trial. *Id.* at 662. While the defendant points to the fact that his case went to trial just two months after his arraignment, that length of time cannot give rise to a presumption that even "fully competent" counsel would be unlikely to be able to provide effective assistance, *id.* at 660, particularly because the federal Speedy Trial Act actually requires (absent a waiver) that "the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days" of the later of the defendant's arraignment and the "filing date (and making public)"

of his indictment, 18 U.S.C. § 3161(c)(1). Dr. La has not presented surrounding circumstances that warrant dispensing with an inquiry into the adequacy of counsel's performance under *Cronic*.

Finally, the defendant misstates the law regarding conflicts of interest and the presumption of prejudice, and his reliance on *Sullivan* is unwarranted. Under well established law, to be entitled to *Sullivan*'s presumption of prejudice, a defendant must establish the existence of an actual conflict of interest involving "multiple concurrent representation," rather than a mere pecuniary conflict. *Accord Mickens*, 535 U.S. at 174–76; *McRae*, 734 F. App'x at 982–83; *Leonard*, 846 F.3d at 844. No such "multiple concurrent representation" is at issue in this case. Consequently, even assuming the defendant can establish the existence of an actual conflict of interest, he still must establish prejudice resulting from it—and/or from his attorneys' other alleged deficiencies.

### 3. The Defendant Has Failed to Show Prejudice

The defendant points to myriad alleged deficiencies on the part of his trial counsel (most of them in a bullet-pointed list), the most serious of which involve counsel's failure to move for a continuance of the trial, despite actual knowledge that they, their medical expert, their consulting investigator, and their client were not adequately prepared to go to trial. The defendant also asserts that the $80,000 nonrefundable retainer presented a direct financial conflict of interest for Ingram, as she would have forfeited her right to most of that sum if the trial had been continued, since she would not have been able to continue to practice law after her election to a judgeship on August 3, 2022. The defendant credibly contends that most cases of this complexity do not go to trial within two months after a defendant's arraignment and that counsel did not file many of the commonly anticipated pretrial motions. He utterly fails, however, to make any factual showing or coherent argument as to how he was prejudiced by any of these purported failures, for purposes of meeting *Strickland*'s second prong.

For instance, regarding Grant's extrajudicial comments, even if her social media posts were improper, unethical, and basically unprofessional, they cannot reasonably be viewed as impugning the defendant. Moreover, there is no suggestion in the record that any juror disregarded the court's very specific instructions that they should not

> review or seek out information about the issues in the case, the parties, the lawyers, [or] the witnesses, either in traditional formats such as newspapers, books, television or radio broadcasts or through the Internet or other computer research [nor] go on the Internet or participate in or review any websites, Internet chat rooms or blogs, nor . . . seek out information of any kind that in any way relates to this case.

(Doc. No. 88, at 24–25.) Even if the court accepts as true that Grant's social media posts violated her ethical obligations (besides simply being grossly unprofessional), the defendant has not presented any evidence from which prejudice to his case could be inferred as a result of her posts.

As for counsel's failure to recognize that the government's pretrial production of the investigative files pertaining to the TDOH investigations against Dr. Null was incomplete, as the defendant argues in his Response (Doc. No. 123, at 2) to the government's Notice Correcting the Record (Doc. No. 122), the court likewise can find no prejudice. First, the extensive jury-out discussion about this issue held before Dr. Null testified reveals that the government accurately, if succinctly, summarized the allegations made in the complaint against Dr. Null that is the subject of the belatedly produced investigative file. (*See* Doc. No. 90, at 79–84.) Based on that information, the court narrowly circumscribed the defendant's ability to use the evidence of the investigations at trial, allowing previous counsel to impeach Dr. Null by asking whether it was not true that there were some complaints pending against her and that, by helping the government, she believed she might be helping herself in these investigations. (*Id.* at 83.) The court excluded any specific evidence regarding the complaints themselves. (*Id.*) Having now reviewed the belatedly produced investigative file (Doc. Nos. 126-1 through 126-6), the court finds nothing in it that

would have warranted alteration of that ruling. Nor has the defendant indicated in what way additional information in the investigative file would have changed the course of the cross-examination of Dr. Null or further served to impeach her credibility.[6]

Regarding the other alleged deficiencies, the defendant's heavy reliance on *United States v. Arny*, 831 F.3d 725 (6th Cir. 2016), in his Reply brief is particularly curious,[7] because that case effectively points out what a defendant needs to do to establish prejudice. The defendant there, like Dr. La, was a doctor charged under 21 U.S.C. § 841(a)(1). He, like Dr. La, asserted that his trial counsel was constitutionally ineffective for, among other things, failing to interview former patients. In that case, however, the defendant submitted affidavits from six former patients showing how they could have offered evidence favorable to the defense. *See United States v. Arny*, 137 F. Supp. 3d 981, 989, 993 (E.D. Ky. 2015), *aff'd*, 831 F.3d 725 (6th Cir. 2016). The defendant also offered other actual evidence to support his claim of prejudice.

Here, despite having been granted numerous extensions of the deadline for filing a motion for a new trial—and then filing an Amended Motion and Amended Memorandum even after the expiration of the final deadline, more than four months after her appointment as counsel for the defendant—it does not appear that current counsel has performed any of the investigation that she accuses former counsel of failing to conduct. For instance, Dr. La faults former counsel for not

---

[6] Aside from the defendant's inability to show prejudice arising from her counsel's failure to recognize before trial that the investigative files were incomplete, he also cannot show that the withheld documentation was "material" for purposes of establishing a *Brady* violation. *See Jalowiec v. Bradshaw*, 657 F.3d 293, 305 (6th Cir. 2011) ("[E]vidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." (quoting *Cone v. Bell*, 556 U.S. 449, 469–70 (2009))).

[7] The defendant cites *Arny* as if it were an unpublished slip opinion rather than a reported case that is now several years old. His faulting the government for not bringing it to the court's attention is also perplexing, since the defendant himself did not cite it in his original or Amended Memorandum.

interviewing the potential witnesses he identified, but the Amended Memorandum does not identify any of these potential witnesses—presumably known to Dr. La—or indicate what their testimony might have been or how it might have helped the defense. Likewise, although the defendant accuses his previous counsel of failing to contact former patients and failing to interview the other Indictment patients who did not testify at trial, counsel now does not identify any former patients who might have testified favorably to Dr. La or explain how testimony from the Indictment patients whom the government did not call as witnesses might have helped him. Dr. La asserts that Mike Staples and Dr. Murphy needed additional time to prepare and to investigate, and has indeed presented an affidavit from Mike Staples in which Staples attests that he informed former counsel prior to trial that his investigation was incomplete, but the defendant has made no effort to show what additional evidence helpful to his case Staples might have produced if trial had been continued and Staples had been granted additional time to complete his investigation. The defendant, in short, has not shown what might have changed if his attorneys or Staples had had more time to prepare for trial. The same problem plagues all of the defendant's assertions that his attorneys' performance was inadequate.

The court further observes that the jury in this case obviously paid close attention at trial and carefully considered the evidence as it related to each charge in the Indictment. Each charge was linked to a specific prescription for a specific controlled substance issued to a specific patient on a specific date. The jury acquitted the defendant on four of the sixteen charges. Given the jury's close and individualized consideration of each charge in the Indictment, it seems unlikely that evidence from other patients to the effect that Dr. La helped them and issued prescriptions to them for a "legitimate medical purpose" and in the "usual course" of his "professional practice" would have aided Dr. La in avoiding conviction on the charges with respect to which the jury rendered a

"guilty" verdict. Likewise, evidence of the FBI's prior investigations finding no wrongdoing (which might well have been ruled inadmissible) and the dearth of pain clinics in the area would not have been likely to affect the jury's decisions on the specific charges. For that reason, and in light of all of the evidence presented against him, the court finds that the defendant's failure to come forward with even a suggestion of how his former counsel's purported failures prejudiced his defense dictates a determination that the defendant has not established that the deficiencies, considered individually and in the aggregate, violated the defendant's Sixth Amendment right to the effective assistance of counsel.

An evidentiary hearing on an ineffective assistance claim is not required "if the petitioner's allegations 'cannot be accepted as true because they are . . . conclusions rather than statements of fact.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)). In this case, even if the court accepts as true the allegations that Lynne Ingram was operating under an actual conflict of interest and that the performance of both of the defendant's attorneys was deficient in numerous ways, the defendant has asserted prejudice—if at all—in an entirely conclusory fashion, unsupported by any actual facts. The court finds, therefore, that an evidentiary hearing is not required.

### D. The Court's Purported Errors

The defendant also contends that legal errors by the court warrant a new trial. In particular, he claims that the court erred in (1) allowing the government's expert witness to testify; (2) denying the defendant's requested "good faith" jury instruction; (3) incorrectly instructing the jury on the elements required to find the defendant guilty of violating 21 U.S.C. § 841(a)(1); and (4) granting the government's request for a "deliberate ignorance" instruction. The defendant argues generally that the combined effect of these errors permitted the jury to convict him merely on the basis of medical negligence rather than intentional conduct.

Section 841 makes it a federal crime, "[e]xcept as authorized[,] . . . for any person knowingly or intentionally . . . to manufacture, distribute, or dispense . . . a controlled substance," 21 U.S.C. § 841(a)(1), including the opioid medications prescribed by Dr. La in this case. A registered doctor is "authorized" to prescribed such medications to patients, but only when the doctor issues the prescription "for a legitimate medical purpose . . . acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a) (2021).

The Supreme Court clarified the *mens rea* required for the conviction of a doctor for prescribing controlled substances outside the usual course of professional practice and without a legitimate medical purpose, in violation of this provision, in *Ruan v. United States*, 142 S. Ct. 2370 (2022). Issued on June 27, 2022, just two weeks before Dr. La's trial began, *Ruan* held that § 841(a)(1) requires, not only the intentional and knowing distribution of controlled substances, but also that the "Government must prove beyond a reasonable doubt that the defendant knowingly or intentionally acted in an unauthorized manner"—that is, that the defendant knowingly and intentionally acted outside the usual course of professional medical practice and without a legitimate medical purpose. *Ruan*, 142 S. Ct. at 2376.[8]

The substantive instruction given in this case—the topic of much discussion among the court and the parties prior to trial—stated in relevant part as follows:

> For you to find the defendant guilty of this crime, you must find that the government has proved each and every one of the following elements beyond a reasonable doubt:

---

[8] The defendant also now asserts, based on *Ruan*, that his Indictment is subject to dismissal because it failed to recite an essential element of the offense—that he "knew or intended that his . . . conduct was unauthorized." (Doc. No. 118, at 55.) This argument is foreclosed by *Ruan* itself, which expressly noted that, "in a prosecution under the Controlled Substances Act, the Government need not refer to a lack of authorization (or any other exemption or exception) in the criminal indictment." *Ruan*, 142 S. Ct. at 2379.

(A) The defendant knowingly or intentionally distributed oxymorphone, oxycodone, and/or morphine sulfate;

(B) The defendant knew at the time of distribution that the substance was a controlled substance; and

(C) The defendant knowingly or intentionally distributed the substance without a legitimate medical purpose outside the usual course of professional practice.

(Doc. No. 68, at 17.) The court also instructed the jury that the terms "legitimate medical purpose" and "usual course of professional practice" mean "acting in accordance with a standard of medical practice generally recognized and accepted in the State of Tennessee." (*Id.*)

The court previously considered and rejected the defendant's arguments in support of his request for a "good faith" instruction. Such an instruction is no longer necessary in light of *Ruan*'s clarification that the *mens rea* required for conviction under § 841(a)(1) is one of intent. The jury was instructed that, in order to convict, the defendant had to intentionally and knowingly prescribe outside the usual course of the practice of medicine and without a legitimate medical purpose. In other words, the government essentially had to prove that the defendant did not act in good faith when writing the prescriptions at issue. Moreover, the defendant remained free to argue, in line with this instruction, that Dr. La had acted merely negligently but not intentionally in deviating from the standard of care.

Regarding deliberate ignorance, the court instructed the jury as follows:

Next, I want to explain something about proving a defendant's knowledge.

No one can avoid responsibility for a crime by deliberately ignoring the obvious. If you are convinced that the defendant deliberately ignored a high probability that he was prescribing controlled substances outside the usual course of professional practice and without a legitimate medical purpose, then you may find that he knew that he was prescribing controlled substances outside the usual course of professional practice and without a legitimate medical purpose.

But to find this, you must be convinced *beyond a reasonable doubt* that the defendant was aware of a high probability that he was prescribing controlled substances outside the usual course of professional practice and without a legitimate

medical purpose and that the defendant deliberately closed his eyes to what was obvious. *Carelessness, or negligence, or foolishness on his part is not the same as knowledge, and is not enough to convict.* This of course, is all for you to decide.

(Doc. No. 68, at 16 (emphasis added).) This instruction reminded the jury that the burden remained on the government to prove all elements of the offense beyond a reasonable doubt and that a *mens rea* of negligence or carelessness was not sufficient to convict.

The Sixth Circuit has described this so-called "ostrich instruction" as "explain[ing] to the jury that knowledge . . . also includes the deliberate avoidance of knowledge." *United States v. Mitchell*, 681 F.3d 867, 876 (6th Cir. 2012). For a criminal offense that requires a "knowing" or "intentional" *mens rea*, it is appropriate to provide a deliberate ignorance instruction when "(1) the defendant claims a lack of guilty knowledge; and (2) the facts and evidence support an inference of deliberate ignorance." *Id.* The district court giving such an instruction must first determine whether the government has presented evidence to support an inference "that the defendant acted with reckless disregard of [the high probability of illegality] or with a conscious purpose to avoid learning the truth." *Id.* (quoting *United States v. Seelig*, 622 F.2d 207, 213 (6th Cir. 1980)) (alterations in original).

Dr. La testified that he prescribed medication to relieve his patients' pain—thus, for a legitimate medical purpose—in the ordinary course of the practice of medicine. He also testified about the "point of care" urine tests and patient exams performed at each visit. The government presented evidence that, despite the use of these procedures, Dr. La deliberately or recklessly disregarded signs that his patients were abusing opioids—including, among other things, repeated irregular drug screens and Dr. Null's warnings—and, therefore, that he was aware of a high probability that he was prescribing controlled substances outside the usual course of professional practice and without a legitimate medical purpose. The court found, and continues to find, that it was appropriate under the circumstances to provide a deliberate ignorance instruction.

And even if there were not sufficient evidence, providing the instruction amounted, at worst, to harmless error. The defendant's assertion that the instruction increased the risk that the jury would find him guilty based on mere negligence is belied by the language of the instruction itself, and this objection has been rejected by the Sixth Circuit based on an identical instruction. *See United States v. Mari*, 47 F.3d 782, 785–86 (6th Cir. 1995) ("[E]ven assuming the district court erred by giving the deliberate ignorance instruction because of lack of evidence, the error was harmless; for [t]he only way we can conclude that the deliberate ignorance instruction was harmful is if we assume that the jury applied the instruction contrary to its express terms." (internal quotation marks and citation omitted)).

Finally, regarding Dr. Lloyd, the government's expert, the defendant never moved to exclude his testimony and has waived the ability to object to his testimony now. More to the point, if the defendant had moved to exclude Dr. Lloyd's testimony, it is unlikely that the court would have granted the motion.[9] The defendant's argument, generally, is that he was convicted based on a malpractice standard rather than a criminal standard, at least in part because Dr. Lloyd "equated the criminal standard 'outside the cour[se] of professional practice and for other than a legitimate medical purpose' with the civil malpractice standard." (Doc. No. 118, at 10.) The defendant, however, is confused about the relevant standard. "Outside the course of professional practice" and "without a legitimate medical purpose" do not establish the criminal standard—rather, it is the act of *knowingly or intentionally* prescribing outside the course of professional practice and

---

[9] As discussed above, the defendant raises an ineffective assistance of counsel claim based vaguely on counsel's "[f]ailure to file any meaningful motion *in limine* to exclude Government evidence or experts." (Doc. No. 118, at 33–34.) The defendant made no effort to establish prejudice arising from that purported failure, under *Strickland*, and the court's conclusion that any motion to exclude Dr. Lloyd's testimony would likely have been futile effectively refutes the possibility of establishing prejudice.

without a legitimate medical purpose that is criminal. Dr. Lloyd's testimony was introduced for the purpose of establishing the applicable standard of care—what it means to prescribe opioid pain medications in the ordinary course of medical practice and for a legitimate medical purpose. The jury was instructed over and over again that it could not convict merely on a negligent violation of the standard of care. Rather, again, it had to find that the defendant *knowingly or intentionally* acted outside the scope of the usual course of the practice of medicine and without a legitimate medical purpose. Dr. Lloyd's testimony, considered in the context of the trial as a whole and the jury instructions, did not suggest to the jury that it could convict based on a malpractice standard.

In sum, the defendant has not established that the jury instructions, taken individually or as a whole, were misleading or failed to provide an adequate understanding of the law, *Miami Valley Fair Hous. Ctr.*, 725 F.3d at 579, or that any other "substantial legal error has occurred" to warrant a new trial, *Munoz*, 605 F.3d at 373.

## IV.    CONCLUSION

For the reasons set forth herein, the defendant's Amended Motion for Judgment of Acquittal (Rule 29) and Motion for a New Trial (Rule 33) (Doc. No. 117) will both be denied. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge